### In re INLAND GAS CORPORATION.

### In re KENTUCKY FUEL GAS CORPORATION.

### In re AMERICAN FUEL & POWER CO.

Nos. 989–B, 991–B, 115.

United States District Court
E. D. Kentucky. At Lexington.
Oct. 1, 1949.

812

LeWright Browning, Ashland, Ky., for Vanston Committee.

Clifford E. Smith, Frankfort, Ky., for trustee, Ben Williamson, Jr.

Baker, Obermeier & Rosner, New York City, for Green Committee.

Bradley & Bradley, Georgetown, Ky., for Edward J. Caughlin and other note holder.

C. M. Harbison, Lexington, Ky., for trustee American Fuel & Power.

Edward S. Pinney, New York City, for Columbia Gas System.

Thos. S. Dawson, Louisville, Ky., for Alfred Howell and other note holders.

Stoll, Keenon & Park, Lexington, Ky., for trustee, C. M. Harbison.

FORD, Chief Judge.

From time to time during the pendency of these proceedings, various questions and issues have been raised. Those questions and issues were referred to and stated in general terms in the orders entered herein on February 4, 1948, and July 19, 1948. Proof was taken in August, 1948, with respect to a number of the questions and issues. The deposition of A. H. Grayburn, taken at Ashland, Kentucky, August 3, 4, 5, 1948, relates in considerable detail to the facts and to the records with respect to certain issues. Further testimony, statements, and arguments were heard by the Court at hearings held on October 11, 25, 26, 27, 1948.

A final determination of all of the pending questions and issues which are referred to in the aforesaid orders of February 4th and July 19, 1948, should be made; and the Court deems it appropriate to now determine them and will do so in the order hereinafter stated.

1. Are Columbia Claims Subordinated to Stock? The Court has been called upon to determine whether or not the claims of the Columbia Gas System, Inc. (prior to its recent change of name known as Columbia Gas and Electric Corporation and herein called Columbia) should be subordinated to stock as well as to the claims of creditors. It is contended by creditors of American Fuel and of Kentucky Fuel that a proper construction of the opinion and mandate of the Circuit Court of Appeals in the cases of Columbia Gas and Electric Corporation v. United States et al., 6 Cir., three cases, reported in 151 F.2d 461, 470 requires that the claims of Columbia be subordinated to the claims against all of the debtor corporations, individually and collectively, namely: Inland Gas Corporation, Kentucky Fuel Gas Corporation, and American Fuel and Power Company, without regard to the separate corporate entity of said companies. It is argued by creditors of the American Fuel and the Kentucky Fuel that approximately 73% of the capital stock of Inland being owned by the American Fuel and pledged as security for the payment of bonds issued by it, and approximately 26% of the capital stock of Inland being owned by Kentucky Fuel and pledged as security for the payment of bonds issued by it, Columbia's claims against Inland should be subordinated to the stock of Inland. On the other hand it is contended by Columbia that the opinion and mandate of the Circuit Court of Appeals by clear and explicit language limited in remedy the subordination of Columbia claims against each particular corporation to the claims of all other creditors of such corporation and did not authorize or direct the subordination of Columbia's claims to the stock of either of the corporations.

The Court regards this as a pure question of law to be determined from the consideration of the opinion and mandate of the Circuit Court of Appeals in the cases hereinabove referred to.

The mandate of the Circuit Court of Appeals, filed February 4, 1946, and corrected on February 7, 1946, ordered that "the decree will be limited in remedy to the subordination of the Columbia claims to the claims of all other creditors of every class, and as so amended, the judgment is affirmed." The Circuit Court of Appeals reviewed the judgment entered by this Court on October 30, 1943, which directed that all claims of Columbia filed in these proceedings be rejected. The Circuit Court of Appeals held that the claims of Columbia should not be rejected but only subordinated "to the claims of all other creditors of every class."

Article II, Chapter X of the Bankruptcy Act, 11 U.S.C.A. §§ 506-507, defines the words claims, creditor and debts as follows:

"(1) 'claims' shall include all claims of whatever character against a debtor or its property, *except stock*, whether or not such claims are provable under section 63 of this Act and whether secured or unsecured, liquidated or unliquidated, fixed or contingent; * * *

"(4) 'creditor' shall mean the holder of any claims; * * *

"(6) 'debts' shall include all claims;".

It will be noted that the statute in defining the word "claims" expressly excludes stock. The definitions of "creditor" and of "debts" respectively are limited to "the holder of any claims" and to "all claims."

This Court is convinced that the Circuit Court of Appeals in using the language limiting the remedy to subordination rather than to the rejection of Columbia's claims was thoroughly familiar with the statutory definitions above quoted; and, that in choosing the language used intended that Columbia's claims against each of the respective corporations should be put at the bottom of the list of "claims" of other "creditors" of each corporation but did not intend that Columbia's claims should be subordinated to capital stock of either of said corporations. The Circuit Court of Appeals in its opinion said:

"In the main, his findings are not controverted insofar as they disclose the origin and purpose of the debtors and the story of Columbia's interest in their activities which follows. Inland Gas Corporation was incorporated in 1927, and Kentucky Fuel Gas Corporation in 1928, both for the purpose of producing, transporting and selling natural gas to industrial consumers. They were promoted by the same person and financed by the same group of bankers, and each issued securities to the public and distributed its common stock to the promoters and underwriters as compensation for services. The promoters also, in July, 1928, organized the American Fuel & Power Company for the purpose of taking over and holding stock of Inland and Kentucky Fuel and other operating companies which might later be organized, in order to integrate and expand their operations through unified control and management. Stockholders of Inland and Kentucky Fuel exchanged their stock for stock in the holding company, and in July, 1929, American Fuel issued and sold to the public an issue of convertible gold notes, maturing July 1, 1934. The proceeds thereof were used to provide financial aid to the operating companies, and to acquire additional gas acreage and transmission lines. American Fuel also organized and financed other subsidiary companies for the purpose of having them acquire, hold and operate various properties."

The fact that the capital stock of Inland and of Kentucky Fuel was issued as promotion stock and the corporations did not receive cash or capital assets in return therefor may have been considered by the Circuit Court of Appeals in its determination that the equities required the remedy to be limited to the subordination of Columbia's claims "to the claim of other creditors of every class". The Circuit Court of Appeals also may have considered the rights and remedies which the stockholders had and which the creditors did not have.

The Circuit Court of Appeals in its decision rendered on October 9, 1945, directed that: "The decree will be limited in remedy to the subordination of the Columbia claims and stock interests in each class to the claims and stock interests of others in such class, and so amended, the judgment is affirmed." In at least some of the peti-

tions for rehearing and modification of that decision, it was forcefully argued that the established equitable principle of subordination "should be applied under the facts in this case, to completely subordinate Columbia's claims *and stock interests* to all other claims *and stock interests in the American Fuel and its subsidiaries.*" It was further argued in the Petition for Rehearing and Modification filed by the attorney for the Trustee of Inland that:

"Granting that the principle of subordination is applicable to the facts as determined, then it would seem that Columbia's claims and stock interests should be fully and completely subordinated, without regard to class, to all claims and stock interests of other creditors of the American Fuel and its subsidiaries. The equitable principle of subordination is thoroughly established and that principle should be applied under the facts in this case, to completely subordinate Columbia's claims and stock interests to all other claims and stock interests in the American Fuel and its subsidiaries.

"Under the facts in this case, it was not the first mortgage bondholders of Inland whose hope of averting financial disaster was destroyed by Columbia's illegal acts, because it appears that the assets of Inland will be sufficient to pay Inland's first mortgage bonds and all accrued interest thereon. The parties 'whose only hope of averting financial disaster' was destroyed by Columbia were the debenture or second mortgage bondholders, the general creditors and the stockholders. * * * It is submitted that the opinion should be modified to require the complete subordination of 'Columbia's claims and stock interests,' regardless of class."

Indebtedness of the Kentucky Fuel cannot be satisfied out of Inland or American Fuel assets. Indebtedness of each corporation must be the basis of a claim or of claims against the assets of that particular corporation; and, the separate corporate entities cannot be disregarded to permit a claim against one to be a claim against the others having separate corporate entities.

The Circuit Court of Appeals by the language used in its opinion and mandate rejected the argument that its opinion and mandate "should be modified to require the complete subordination of Columbia's claims *and stock interests* regardless of class."

The opinion of the Circuit Court of Appeals is reported in 151 F.2d 461. There were three separate appeals, one in the matter of Inland Gas Corporation, debtor, in bankruptcy No. 989-B, one in the matter of Kentucky Fuel Gas Corporation, debtor, in bankruptcy No. 991-B, and one in the matter of American Fuel & Power Company, debtor, in bankruptcy No. 115. The cases were not consolidated but were heard and considered together. The Court construes the opinion and the mandate to apply in each separate case with respect to each separate corporation and as so construed, it appears clear to the Court, the opinion of the Circuit Court of Appeals and the mandate require that Columbia's claims be subordinated as to each corporation to all other claims against such corporation but that Columbia's claims are not subordinated to the stock in either of said corporations.

It is now argued by creditors of American Fuel and of Kentucky Fuel that the condition of Inland has so improved, Inland's First Mortgage Bonds have been paid in full and the assets of Inland are clearly sufficient to eventually pay in full all of the claims against Inland, other than Columbia's claims, that Columbia will have a substantial equity in assets of Inland, unless its claims are subordinated to Inland stock, and this Court should now hold that Columbia's claims against Inland are subordinated to the stock of Inland so that the creditors of American Fuel and the creditors of Kentucky Fuel may receive the value of such equity. This Court is of the opinion that it has no power or authority to deviate from the mandate issued by the Circuit Court of Appeals. The Supreme Court of the United States from its earliest days has consistently so held and that principle has recently been reaffirmed by the Supreme Court in the case of Briggs, etc., v. Pennsylvania Railroad Company decided on May 24, 1948, and reported in 334 U.S. 304, 68 S.Ct. 1039, 92 L.Ed. 1403. The Court's conclusion is that the mandate of

the Circuit Court of Appeals clearly directs that Columbia's claims against Inland be subordinated to the "claims of all other creditors of every class" of Inland but are not subordinated to the stock of Inland; that Columbia's claims against American Fuel and against Kentucky Fuel are likewise subordinated.

2. Does Carbreath Have a Valid Claim Against Inland Based Upon a Breach of a Contract by Inland? A claim was filed on behalf of Carbreath Gas Company v. Inland. This claim was based upon an alleged breach of contract by Inland. The facts and circumstances with respect to the Carbreath claim are as follows:

The United Carbon Company and Lynn S. Horner, Osman E. Swartz and F. C. Devericks, who were officials of the United Carbon Company, owned certain oil and gas leases and wells and pipelines in Floyd County, Kentucky. The United Carbon Company entered into a written agreement dated October 12, 1927, with Alfred Howell whereby Howell agreed to take and pay for at prices specified in the contract "all of the gas that may be produced and is produced from said wells" for a period of ten years "and as long thereafter as gas may be produced from said leases." The price to be paid for the gas was thirteen cents per 1,000 cubic feet for the first five years. Thereafter the price was to increase by one cent a 1,000 cubic feet each year for a period of five years and one-half of one cent per 1,000 cubic feet each year, for a period of five years until the price reached a maximum of 20½c per 1,000 cubic feet and the latter price to remain during the life of the contract. This contract was similar in terms to the burdensome Piney and Hamilton contracts. Under date of November 18, 1927, Howell assigned all of his right, title and interest in said contracts to Howe Oil and Gas Company. Under date of December 15, 1927, the Howe Oil and Gas Company made an assignment of its rights, benefits and privileges under said contract to Inland Gas Corporation. (See Grayburn's Exhibit 11.) By deed dated July 27, 1928, United Carbon Company conveyed to Inland the title to all of the leases, properties, etc., covered by the above mentioned contract between United Carbon and Howell. (See Grayburn's Exhibit 16.) On the same date Ben S. Horner and Emma Horner, his wife; Osman E. Swartz and Harriet G. Swartz, his wife; and F. Camden Devericks and his wife executed a deed conveying to Inland the title to the leases, etc., which they owned in connection with and as a part of the same properties which was the subject matter of the contract and deed from the United Carbon Company. By deed dated July 31, 1929, Inland Gas Corporation conveyed all of the aforesaid leases and property to Carbreath Gas Company. (See Grayburn's Exhibit 13.) This deed contained a covenant that Inland the grantor "will warrant specially the title to the property hereinabove described, and that the same, and every part thereof, is free and clear of liens and encumbrances created by the party of the first part, except the lien of purchase money, etc."

Mr. Grayburn, who was thoroughly familiar with the transaction, said in his deposition it was the intention of the promoters that Kentucky Fuel Gas Corporation should acquire these properties from the United Carbon Company but the latter Company refused to deal with Kentucky Fuel and would deal only with Inland. That was the only reason Inland took title to the properties and made the purchase money mortgage or lien and issued the purchase money notes. It was arranged that Kentucky Fuel should pay each note as it matured and it did so for a period of time. The Carbreath Gas Corporation was organized by American Fuel and Inland was caused to convey the properties to Carbreath and Carbreath reimbursed Kentucky in cash for the expenditures made by Kentucky Fuel.

A resolution of the Board of Directors of Inland recited among other things: "Whereas the operation of Inland Gas Corporation and of Kentucky Fuel Gas Corporation requires that said property shall be owned by one or the other of said companies and so operated as to insure the most advantageous and economical production of gas therefrom under the operating agreement which subsists between them."

■ There was never any contract between Inland and Carbreath upon which to predicate the claim of Carbreath. At the time of the execution of the deed from Inland to Carbreath, American Fuel owned all of the stock of Carbreath and substantially all of the stock of Inland and Kentucky Fuel. Kentucky Fuel and Inland's funds had been exhausted and American Fuel was providing finances to meet certain of their obligations. American Fuel was in full control of the operation of its subsidiaries and they were operated by the same, or substantially the same, directorates and officers. Both Inland and Kentucky Fuel already were in financial difficulties and it is reasonable to assume that when American Fuel or the promoters decided to acquire title to the leases from the United Carbon Company and others, their object was to be relieved of the burdensome contract which Howell had entered into. The Court having reviewed all of the testimony and the exhibits is of the opinion that when Inland by deed acquired title to the leases which were later conveyed by Inland to Carbreath, it thereby became the owner in fee of said properties and the obligations under the contract between Howell, United Carbon Company and others which had been assigned to Inland became merged with the fee. When Inland conveyed those properties to Carbreath by covenant of special warranty, Carbreath took title thereto without any obligation on the part of Inland to purchase the gas under the terms of the old contracts which Howell had entered into and which had been assigned to Inland.

The Court is of the opinion that the record does not establish that there existed between Inland Gas Corporation and Carbreath Gas Company any contract upon which Carbreath's claim can be predicated. There was no assignment to Carbreath of any of the rights which United Carbon and others had against Inland prior to the execution by United Carbon Company and others to Inland of the deeds. There is nothing in the record to show that Inland assumed such obligations to Carbreath.

In addition to the foregoing facts and reasons, the same parties were in full control of Kentucky Fuel, of Inland, of Carbreath and of American Fuel and such contract or obligation had it been made would have been unreasonable and unfair to Inland and its creditors and under the instrumentality rule would not be enforced. In addition to the foregoing facts and reasons, the evidence is insufficient to establish what, if any, damages were sustained by Carbreath had there been such an obligation from Inland to Carbreath.

It is argued in support of Carbreath's claim that when the receiver with the approval of the Court disaffirmed the contracts with Piney and Hamilton, he, with like approval of the Court, also disaffirmed the contract with Carbreath, and that by reason thereof the Trustee is now estopped to deny the existence of the contract. The Court is of the opinion that the receiver, probably without full knowledge of all of the facts and out of an abundance of caution, asked the approval of the Court for the disaffirmance of any obligation which might have existed under the United Carbon Company contract. In fact, no such contract or obligation at the time existed from Inland to Carbreath and there is no basis for applying any rule of estoppel. In fact, no principle of estoppel could establish a contractual obligation which the record clearly shows did not exist.

For the foregoing reasons, the claim filed against Inland on behalf of Carbreath Gas Company is disallowed in its entirety.

3. Operation Claims of Inland Distributing and Carbreath v. Inland. From time to time various claims have been asserted against Inland by creditor's committees on behalf of Inland Distributing Company and Carbreath Gas Company. Those claims have been predicated upon the grounds, among others, that the field prices paid by Inland for gas purchased from Carbreath were unfair and inequitable; that the gas sold by Inland to Inland Distributing Company should have been sold at cheaper prices and that gas produced by Carbreath should have been transported and sold to Inland Distributing Company on more favorable terms both to Carbreath Gas Company and Inland Distributing Company. The Court is thoroughly familiar

with all of the facts involved, including the fact that Inland with the approval of the Court advanced money to Carbreath for the payment of taxes and from time to time with the approval of the Court advanced money to the Inland Distributing Company.

Without going into the various details, the Court finds that the operating relationships between Inland and Carbreath and between Inland and Inland Gas Distributing Company have at all times been fair and equitable to Carbreath and to Inland Distributing Company, and neither of said companies have any valid claim against Inland, except such claims as are carried on the books of Inland with respect to current accounts.

4. Validity and Application of Second Mortgage. Various parties to these proceedings have questioned the validity of the second mortgage executed by Inland to the Ashland National Bank and Porter M. Gray as Trustee, dated January 2, 1930, and purporting to secure payment of $1,489,000, in principal amount of ten-year 7% Sinking Fund Debentures which were issued under and pursuant to an indenture of trust executed by Inland to the New York Trust Company as Trustee, dated February 1, 1928, and also securing $400,000 in Inland 6% Gold Notes executed by Inland to American Fuel in part payment of advances made by American Fuel to Inland. Some of the parties have attacked the validity of the second mortgage upon the grounds that there was no consideration because the indebtedness purported to be secured thereby had already been incurred. Other parties have attacked the validity of the mortgage upon the grounds that the officers and the board of directors of American Fuel, who were also in control of Inland at the time, feared the results of threatened suits by Piney and Hamilton and by reason thereof caused the second mortgage to be executed to secure the debentures and $400,000 in principal amount of the advancements made by the American Fuel to Inland evidenced by Inland 6% Gold Notes issued to American Fuel. In this connection, it was argued that the Piney and Hamilton suits were settled and that the contingency which motivated the officers and directors in causing said second mortgage to be executed never developed. Other general grounds have been argued such as that the officers and directors of American Fuel and of Inland by causing said second mortgage to be executed undertook to create a preference and for that reason the mortgage is invalid.

The Court is of the opinion that the existing indebtedness constituted a sufficient consideration for the execution of the mortgage and that said mortgage is valid and enforceable. Regardless of the reasons or the motives for the execution of the mortgage, there was a valid consideration for its execution and its validity and effect was not contingent or conditioned upon any event or condition subsequent. By reason of said mortgage, the Inland Debentures and Inland Gold Notes are secured thereby ratably and equally, one without priority or preference over the other, except as to those debentures which are owned by Columbia and which have been subordinated to the claims of all other creditors of every class.

5. Should American Fuel's Claims v. Inland be Treated as Contribution to Capital, and Disallowed as Debts of Inland, or Subordinated? Various creditors of Inland have insisted that the claim of American Fuel and Power Company against Inland, which are based upon Inland Gold Notes and upon American Fuel's general claim for advancements made by it to Inland, should be regarded as contributions to capital and disallowed as debts of Inland or in the alternative subordinated to all other claims of creditors of every class except to the claims of Columbia. In determining these questions, it is important to keep in mind that inland was organized March 31, 1927, Kentucky Fuel was organized May 17, 1928, and American Fuel was organized on July 7, 1928. This is not a case in which the parent company organized, or caused to be organized, subsidiaries with inadequate capital. It is the reverse because Inland and Kentucky Fuel, which later became subsidiaries of American Fuel were under-financed from

the start and American Fuel was organized in part at least to provide funds for Inland and Kentucky Fuel to meet their respective obligations. The funds advanced to Inland by American Fuel were raised by the sale to the public of American Fuel's securities. Neither the creditors of Inland nor the creditors of Kentucky Fuel at the time the credit was extended relied or had a right to rely upon the American Fuel being responsible in whole, or in part, for the payment of the debts of either Inland or Kentucky Fuel because American Fuel had not come into being. The advancements made by American Fuel to Inland from funds which the former had acquired by the sale to the public of its securities, were to help keep Inland from defaulting in its obligations and to prolong its chances or opportunities of successfully continuing to function. There is nothing in the record to sustain or justify any conclusion that Inland, or its creditors, were in anywise injured or overreached by American Fuel in the making of said advancements.

The Court is of the opinion that the American Fuel has the right to make said advancements; that they were made with the expectation on the part of both American Fuel and Inland that they would be repaid by Inland to American Fuel. Therefore, said advancements are valid debts of Inland and American Fuel's claims based thereon are valid subject only to the limitation in the amount thereof hereinafter determined.

■ 6. The Amount of American Fuel's Claims for Advancements. The record shows that the total amount of advances made by American Fuel to Inland exclusive of interest was $783,631.62. Of that amount $400,000 was funded by Inland issuing to American Fuel $400,000 in principal amount of Inland 6% Gold Notes which were and are secured by the second mortgage hereinabove referred to which was executed as of date January 2, 1930, which also secured the Inland debentures *pari passu.* There should be deducted from the balance of $383,631.62 the sum of $47,-695.20, leaving the balance of American

Fuel's general claim in the principal amount of $335,936.42. At the time the advancements were made by American Fuel to Inland, Mr. F. A. Freeman was President of Freeman, Smith and Camp Company, Security Brokers, and he and his associates held the voting control of American Fuel and of Inland. The American Fuel and Power Company purchased bonds and securities which it turned over to Inland at par value and charged Inland par value therefor, although American Fuel and Power Company paid $47,695.20 less for said securities than it charged Inland therefor. In view of the corporate relationship existing between Inland and American Fuel and in view of the common management and control coupled with Inland's inability to meet its Sinking Fund requirements, it was unfair and inequitable and over-reaching of Inland for the American Fuel to purchase for Inland's account securities and charge Inland a profit therefor of $47,695.-20. Therefore, said amount will be deducted from American Fuel's general claim against Inland, leaving a balance due American Fuel on its general claim against Inland of $335,936.42 with interest thereon at the rate of 6% per annum from the respective dates of the advancements until paid. Under the law of Kentucky, American Fuel is entitled to interest at the legal rate on the amount of said advancements and the books of Inland indicate that both Inland and American Fuel expected said advancements to bear interest at the legal rate in Kentucky. Therefore, it is the conclusion of the court that the American Fuel claim against Inland on the secured notes should be allowed in the principal sum of $400,-000 with 6% interest per annum from the date thereof until paid; that said notes and interest thereon are secured by the aforesaid second mortgage equally and ratably with the Inland debentures; and, that American Fuel's general claim against Inland should be allowed and approved in the amount of $335,936.42 with interest thereon at the rate of 6% per annum from the respective dates of the advancements until paid. The claim for compound interest, or interest upon past due interest, on said $400,000 in Inland Gold Notes should be disallowed and

only simple interest thereon is due and payable.

7. The Holders of Inland Debentures are Not Entitled to Interest on Overdue Interest. It is claimed on behalf of the holders of Inland debentures that under the terms and provisions of the indenture of trust executed to Inland to the New York Trust Company as Trustee dated February 1, 1928, and under the terms of the second mortgage executed by Inland to Ashland National Bank and Porter M. Gray as Trustee dated January 2, 1930, the holders of Inland debentures are entitled to interest on overdue interest upon Inland debentures. Said debentures and the indenture of trust dated February 1, 1927, under and pursuant to which the debentures were issued were executed in the State of New York. Under the decision in the cases of In re American Fuel & Power Co. et al. (Green et al. v. Vanston Bondholders Protective Committee), 6 Cir., 151 F.2d 470, affirmed in 329 U.S. 156, 67 S.Ct. 237, 91 L. Ed. 162, it seems clear that the claim of the debenture holders for interest on past due interest cannot be sustained unless by the execution of the second mortgage, which was executed and delivered in Kentucky, the Kentucky law is applicable rather than the law of New York.

At the time the second mortgage was executed the debts evidenced by the debentures had already been created and were valid and subsisting but subject to the law of the State of New York. The execution of the second mortgage and the incorporation in the terms thereof of provisions in the original indenture does not bring the debentures under the Kentucky law with respect to interest. Had such been the effect, the maximum legal interest under the law of Kentucky is 6% per annum and the excess provided in the original indenture and in the debentures would be void. The Court is of the opinion that the debentures bear simple interest according to their terms and that neither the holders of said debentures nor the holders of interest coupons are entitled to interest on overdue interest.

In addition to the foregoing reasons, the Court takes judicial notice of the current interest rates that have prevailed throughout the years involved and that now prevail, and in the light of the interest rates which have prevailed and which now prevail, the 7% interest rate provided in the debentures is approximately twice what the average prevailing interest rates are and have been, and it would be inequitable and unfair to other creditors for the debenture holders to be allowed 7% per annum simple interest on the face amount of the debentures and then add to that interest on overdue interest or on overdue interest coupons.

The court concludes that the claims of debenture holders should be allowed for principal and simple interest at 7% per annum and no interest should be allowed on overdue interest.

8. The Kentucky Fuel does not have a valid claim against Inland. The Trustee of Inland in his petition filed on February 10, 1948 presented for determination the question as to whether or not Kentucky Fuel and Power Company has a valid claim against Inland by reason of the facts and circumstances under which Kentucky Fuel purchased some of Inland's outstanding capital stock. The Vanston Committee by appropriate pleadings asserted said claim in the amount of $392,919.60. This claim is predicated upon substantially the following facts:

After Kentucky Fuel Gas Corporation was organized and when its first mortgage bonds were sold on or about June 8, 1928, the Kentucky Fuel deposited with the Chattam-Phoenix National Bank in escrow $419,000 from which the Chattam-Phoenix by direction of those in control of Kentucky Fuel purchased 52,250 shares of Inland stock then held by a group of stockholders residing in Cincinnati, Ohio. The total cost to Kentucky Fuel for the purchase of said shares was $392,919.-60. The parties who organized and controlled the Kentucky Fuel and who later organized American Fuel caused this stock purchase to be made to get "rid of the Cincinnati stockholders" of Inland. Inland did

not receive any part of the money paid by Kentucky Fuel for said stock. This Court is of the opinion from the record that there is no basis whatsoever for any claim of Kentucky Fuel against Inland except Kentucky Fuel still owns the stock in Inland so purchased. Whatever rights the Kentucky Fuel may have had with respect to what is charged to have been an improvident investment would have been against the individuals who constituted its Board of Directors and officers at the time and who later organized and controlled the American Fuel and Power Company. It was further argued by Counsel for the Vanston Committee on behalf of the Kentucky Fuel First Mortgage Bond holders that if Kentucky Fuel's claim against Inland be denied, and Kentucky Fuel is the owner of Inland stock so purchased, in such event, American Fuel's claims and stock interest must be subordinated to the Kentucky stock of Inland. The Committee representing the Kentucky debenture holders contended that American Fuel's claims should, on equitable grounds, be subordinated to the claims of Kentucky Fuel's creditors. The Court is of the opinion that Inland stock has no value but if ultimately it should be determined that said stock does have value, the Court does not believe that there is any sound basis or justification for subordinating either the claims or stock interests of American Fuel to the stock interests which Kentucky Fuel owns in Inland or to the claims of Kentucky Fuel's creditors. It is the court's conclusion that the Kentucky Fuel Gas Corporation does not have any valid claim against Inland; and, that there is no ground or basis in the record for subordinating either the claims or stock interests of American Fuel to the stock interests in Inland which are owned and held by Kentucky Fuel or to the claims of Kentucky Fuel's creditors.

8a. Additional or supplemental findings of fact with respect to questions stated in Paragraphs 5, 6, and 8. The Court finds the following facts:

(a) At the time of the acquisition by Kentucky Fuel Gas Corporation of the 52,250 shares of the capital stock of the Debtor, as set out in the Eighth (8) finding, said stock had only a nominal value.

(b) Inland, Kentucky Fuel, and American Fuel were incorporated under the laws of Delaware on March 31, 1927, May 17, 1928, and July 7, 1928, respectively. Zwetch, Heinzelmann and Company, Freeman, Smith and Camp Company, Paul and Company, were underwriters of the Securities issued and sold by Inland and Kentucky Fuel. In connection with the underwriting, they and their associates acquired stock control of both Inland and Kentucky Fuel. They and their associates had stock control and control of the Board of Directors of both Inland and Kentucky Fuel on and prior to June 8, 1928, the date on which Kentucky Fuel was caused to purchase Inland stock from the Cincinnati group of Inland stockholders. Said underwriters and their associates caused American Fuel to be organized. (Grayburn's deposition, pages 98 to 100, inclusive, and testimony in the record of Paul Heinzelmann, Frank A. Freeman and others.) The organization of American Fuel as a holding company for the acquisition and holding of the stock control of both Inland and Kentucky Fuel had been determined and agreed upon by the aforesaid underwriters and their associates prior to the acquisition by Kentucky Fuel of the Inland stock. The subsequent incorporation of American Fuel on July 7, 1928, and the subsequent transfer of stock control of Inland and Kentucky Fuel to American Fuel were actions taken pursuant to the general plan formulated, determined and agreed upon by the aforesaid underwriters and their associates prior to the acquisition by Kentucky Fuel of the 52,250 shares of capital stock of Inland.

(c) During the times involved, prior to the institution of the Receivership suit, American Fuel and Power Company, Inland and Kentucky had substantially the same directors and officers.

9. Classification of Claims against Inland. For the purposes of a plan of reorganization, its approval and acceptance,

creditors and stockholders of Inland shall be classified as follows:

Class 1—Holders of Inland Debentures and holders of Inland Secured Notes.

Class 2—The United States of America, by reason of any and all Federal taxes and customs duties due from Inland.

Class 3—Claims of state and local taxing authorities with respect to taxes.

Class 4—Holders of claims with respect to Workmen's Compensation.

Class 5—Holders of sundry unsecured claims against Inland, which are to be paid in cash under the plan.

Class 6—Holders of unsecured general claims against Inland.

Class 7—Columbia's claims as the owner and holder of first mortgage bonds of Inland.

Class 8—Columbia's claims as the owner and holder of Inland debentures.

Class 9—Columbia's general claims.

Class 10—Inland stockholders.

10. Inland Liabilities. As of December 31, 1948, the liabilities of Inland were as follows:

SECOND MORTGAGE:
Principal:
Debentures held by the
public ............... $1,129,900.00
6% Notes held by American Fuel and Power... 400,000.00

$1,529,900.00

Accrued Interest:
Debentures held by the
public ............... $1,456,629.40
6% Notes held by American Fuel and Power... 456,000.00

$1,912,629.40

TOTAL SECOND MORTGAGE ............... $3,442,529.40
American Fuel
General Claim $335,936.42
Accrued interest on American Fuel General Claim... 421,135.58

Miscellaneous, small general claims ...... 10,023.00

TOTAL GENERAL CLAIMS OTHER THAN CLAIMS OF COLUMBIA .......... 767,095.00

TOTAL CLAIMS (other than claims of Columbia)....... $4,209,624.40
Claims of Columbia Gas and Electric Corporation subordinated "to the claims of all other creditors of every class" by order of the United States Circuit Court of Appeals, Sixth Circuit, in the case of Columbia Gas and Electric Corporation v. U. S., et al., 151 F.2d 461... 4,521,219.40
Common Stock............ 2,126,587.00

11. The Valuation of the Assets of Inland. The Court having considered the report prepared and filed by Ford, Bacon & Davis, dated October 15, 1948, the report of gas reserves as of May 31, 1948, filed by Alden W. Foster, the testimony of Erick Larson, the testimony of Ben Williamson, Jr., Trustee of Inland, the report of the Securities & Exchange Commission which was filed on June 2, 1949, and other relevant evidence, reports and documents which have been filed in these proceedings, finds that the commercial value of Inland's assets as of May 31, 1948, was $4,409,080 plus net current assets of $828,548, or a total value of all of the assets of Inland as of May 31, 1948 of $5,237,628.

12. Inland Insolvent. It follows from findings of liabilities and of the value of assets of Inland as hereinabove set forth in paragraphs 10 and 11 that Inland is insolvent and that Inland stock has no value and the holders of said stock have no equity and are not entitled to participate in any plan for the reorganization of Inland.

13. Liabilities of American Fuel and Power Company. The liabilities of American Fuel consist of 5-year 7% convertible Gold Notes dated July 1, 1929, and due July 1, 1934. The aggregate principal

amount of the issue was $1,965,100 of which $1,905,100 face amount are held by the public and $60,000 face amount are held by Columbia. There is accrued interest to December 31, 1948, on the publicly held notes in the amount of $2,467,104.50 and on the notes held by Columbia in the amount of $77,700. In addition Columbia owns unsecured notes of American Fuel in the principal amount of $552,000 upon which there is accrued interest to December 31, 1948, in the amount of $609,728.16. With the exception of inter-company claims, the foregoing are all of the liabilities of American Fuel and its subsidiaries (other than Inland and Kentucky Fuel) with the exception of accrued taxes and claims for accrued royalties against certain of its subsidiaries, the entire amount of which it is estimated by the Trustee will not exceed $15,000. Capital stock of American Fuel in the amount of $557,902.01, total liabilities $5,771,575.87.

14. Value of the Assets of American Fuel and all of its Subsidiaries except Inland and Kentucky Fuel. The property and physical assets of American Fuel consist of the following, other than stock in its subsidiaries:

(1) Cash on hand and in the bank in the amount of $6,737.38.

(2) $400,000.00 face amount of 6% gold notes of Inland Gas Corporation together with interest thereon from December 2, 1930, making the aggregate amount of said claim as of December 31, 1948, $856,000.00.

(3) General claim against Inland Gas Corporation together with interest aggregating as of December 31, 1948, $698,747.75.

The assets of Carbreath Gas Company consist principally of gas producing acreage located in Floyd County, Kentucky, together with field pipes and the other necessary equipment to transport the gas produced from the field to the main lines. All of the gas presently produced by Carbreath is purchased by Inland with minor exceptions.

The remaining assets of Carbreath consist of:

(1) Cash on hand and in the bank in the amount of $126,309.67.

(2) Receivables aggregating $1,368.81.

Of the above cash on hand the sum of $125,500.00 was received from the sale, heretofore ordered by the Court, of fee acreage owned by Carbreath.

The assets of Inland Gas Distributing Company consist of a pipeline located in Boyd County, Kentucky, and Wayne County and Cabell County, West Virginia, including as easement for the use of land and other incidental and auxiliary equipment customarily used in the transportation of natural gas. Inland Gas Distributing Company purchases all of its gas from Inland, having no other source.

The remaining assets of Inland Gas Distributing Company consist of:

(1) Cash on hand and in the bank in the amount of $97,232.04.

(2) Receivables aggregating $59,511.62.

(3) Inventory of materials and supplies: None.

(4) Miscellaneous assets in the amount of $40,167.57.

The assets of Buckeye Fuel Company consist of .177 miles of pipelines located in Lawrence County, Ohio, together with cash on hand in the amount of $534.28.

The assets of Buckeye Gas Service Company consist of distributing lines in the State of Ohio, cash on hand in the amount of $15,609.02, and receivables in the amount of $4,504.73.

The assets of Kentucky Drilling Company are nominal and are given a value for the purposes of the plan of $1,000.00.

In addition to the foregoing subsidiary companies, the American Fuel and Power Company owns all of the capital stock of the Bridge Gas Company, which corporation has a pipeline crossing under the Ohio River and is the link between the Inland Gas Corporation and the Buckeye companies. The Buckeye companies are engaged in the sale of gas in the State of Ohio and their only source of supply is the Inland Gas Corporation. The capital stock of the Bridge Gas Company has a value of $10,000.

15. American Fuel and Power Company Insolvent. As follows from the findings hereinabove made in paragraphs 13 and 14, American Fuel is insolvent. The amount of the publicly held 7% convertible gold notes of American Fuel including principal and interest, which are held by the public, is in excess of the value of all the assets of American Fuel. Therefore, the holders of stock of American Fuel have no equity in the assets of American Fuel and are not entitled to participate in a plan for the reorganization of American Fuel or of American Fuel or its subsidiaries.

16. Valuation of the Assets of all of American Fuel's Subsidiaries except Inland and Kentucky Fuel. The Court having considered the report prepared and filed by Ford, Bacon & Davis dated October 15, 1948, the report of gas reserves as of May 31, 1948, filed by Alden W. Foster, the testimony of Erick Larson and Ben Williamson, Jr., and other relevant evidence, reports and documents which have been filed in these proceedings, finds that the fair commercial value of these companies, considering them separately, is as follows:

| | |
|---|---|
| Inland Gas Distributing Company | $273,760.00* |
| Net current assets | 87,182.13 |
| Total valuation | $360,942.13 |
| Carbreath Gas Corporation | $ 37,120.00* |
| Net current assets | 119,067.20 |
| Total valuation | $156,187.20 |
| Buckeye Gas Service Company | $ 74,820.00* |
| Deficit | 16,706.29 |
| Total valuation | $ 58,113.71 |
| Buckeye Fuel Corporation | $ 4,060.00* |
| Deficit | 8,178.16 |
| Total valuation | $ 4,118.16 |
| Bridge Gas Company | $ 10,000.00* |
| The Kentucky Drilling Company | $ 1,160.00* |
| Net Current Assets | 561.93 |
| Total valuation | $ 1,721.93 |

The foregoing amounts which are followed by asterisks are found to be the fair commercial values of the assets of said subsidiary corporations as of May 31, 1948. Since between thirty and thirty-five percent of the gross revenues of Inland are derived from or through said subsidiaries, their value to Inland if acquired and operated by Inland as a part of its system will be substantially in excess of their commercial value.

17. Kentucky Fuel. The liabilities of Kentucky Fuel very greatly exceed the value of its assets. Kentucky Fuel is hopelessly insolvent and its stock has no value and its stockholders have no equity in its assets.

18. Persons not Entitled to Participate in a Plan or Plans for Reorganization. The American Fuel and Power Company, Inland Gas Corporation, and Kentucky Fuel Gas Corporation are each insolvent. In the consideration of a plan or plans of reorganization, the stockholders of neither American Fuel and Power Company, Kentucky Fuel Gas Corporation, nor of Inland Gas Corporation have any equity; and, having no equity, they are not entitled to participate in any plan of reorganization.

19. The Petition and Intervening Petition of the Green Committee Asserting the Right of Equitable Recoupment Set-Off and Counter-Claim Pro Tanto Against Columbia Gas & Electric Corporation. On January 17, 1949, the Green Committee by Counsel tendered for filing a pleading entitled: "Petition and Intervening Petition of the Green Committee Asserting the Right of Equitable Recoupment, Set-Off and Counterclaim Pro Tanto Against Columbia Gas & Electric Corporation." On said day an order was entered, filed and noting said pleading of record, and assigning it for a hearing for Wednesday, February 23, 1949, at which time the Court heard and considered arguments both in support of and opposition thereto. It is asserted in the petition and by Counsel for the Green Committee that the acts of Columbia which have been established by proof in previous hearings resulted in the American Fuel and Power Company, its

subsidiaries, and its creditors having two separate and distinct primary rights against Columbia, namely: an equitable right of beneficiary against fiduciary and the statutory right under the federal anti-trust laws; and, that the breach of said fiduciary duties and obligations by Columbia constituted a distinct and separate wrong in addition to the violation of the anti-trust laws. It is alleged in the petition that: "Upon information and belief, that the equitable recoupment, set-off and counterclaim in this proceeding would extinguish Columbia's claims against the Debtor herein."

The prayer of the petition was first that the Green Committee be permitted to intervene and "that the Trustee be authorized and directed to file the necessary petition for a hearing and determination of the right of equitable recoupment, set-off and counterclaim *pro tanto* herein asserted, without prejudice to the existing and projected anti-trust actions."

The liability of Columbia for its acts and conduct referred to in the Green Committee's petition has been asserted many times in the record. A review of the record of the hearings in the year 1940 shows the assertion of various and sundry claims of liability against Columbia. On January 11, 1941, this Court filed findings of fact in which the Court reviewed proceedings back as far as September 14, 1937, when the Green Committee filed a petition in American Fuel and Power case then pending in Delaware. In said findings of fact and conclusions of law, this Court concluded that the suits then and now pending by the Trustee of Inland Gas Corporation and Kentucky Fuel Gas Corporation v. Columbia in Delaware, "involve a serious question as to the amount of damages recoverable, if any, and other serious questions of law and fact, all of which make doubtful and uncertain the advantageous or successful prosecution of any of them." In the conclusions of law filed by this Court on January 11, 1941, the Court said:

"That it is doubtful whether any cause of action exists in favor of American Fuel and Power Company or its subsidiaries against Columbia Gas and Electric Corporation arising out of or on account of violation of the Anti-trust laws, as alleged and set forth in the record of this proceedings.

"That the alleged cause of action in favor of American Fuel and Power Company and each of the actions now pending on behalf of Inland Gas Corporation and Kentucky Fuel Gas Corporation involve a serious question as to the amount of damages recoverable, if any, and other serious questions of law and fact, and by reason thereof the advantageous or successful prosecution of any or either of said cause or action is rendered doubtful and uncertain."

In paragraph 10 of said conclusions of law, the Court pointed out "the uncertainty of being able to prove any definite amount of damage to any one of the corporations."

On appeal to the Circuit Court of Appeals from the orders entered in this Court on January 11, 1941, predicated upon said findings of fact and conclusions of law, the Circuit Court of Appeals in its opinion by Judge Hamilton in the case entitled In re American Fuel & Power Company and five other cases, reported in 122 F.2d 223, reviewed the facts with respect to Columbia's acts and conduct. In the opinion, page 226, the Court said:

"At the time Columbia acquired these securities, the American Fuel & Power Company and its subsidiaries were in financial difficulties and the only direct prospective return on any of the securities would arise from the completion of the proposed gas pipe lines to Detroit, and from that source only."

Again in the opinion the Court referred to the suits of Williamson, Trustee, against Columbia which were instituted in the District Court of Delaware and said:

"These actions were instituted and the District Court of Delaware sustained a demurrer to the petitions on the ground the causes were barred by the applicable statutes of limitation of Delaware. Williamson v. Columbia Gas & Electric Corp. 27 F.Supp. 198. On appeal the judgment of the lower court was sustained. 3 Cir., 110 F.2d 15.

Certiorari was denied May 27, 1940, 310 U.S. 639, 60 S.Ct. 1087, 84 L.Ed. 1407."

Again in the opinion 122 F.2d on page 229, the Court said:

Again in the opinion 122 F.2d on page 229, the Court said:

"The title of the Columbia to the stock interest and claims which it presents against the debtor has an immediate and necessary relation to its right to enforce them. Its wrongful conduct is not merely collateral to its cause of action against the debtors and its moral turpitude, and not only the actual injuries done to the minority interests of the debtors, must condemn it. The damages sustained by these interests are not inconsequential, although proof of them may be difficult."

Following the mandate of the Circuit Court of Appeals in the case next above referred to, parties representing all of American Fuel and Power Company and all of its subsidiaries, including various creditors' committees and the United States of America, through the Department of Justice, framed the issues with respect to Columbia's acts and conduct and elected to proceed against Columbia to subordinate or reject completely all of Columbia's claims and stock interests in the American Fuel and Power Company and in each of its subsidiaries. The findings of fact and conclusions of law of this Court at the conclusion of said hearings and the statements of the facts in the opinion of the Circuit Court of Appeals in the case of Columbia Gas and Electric Corporation v. United States et al., three cases, reported in 151 F.2d 461, clearly reveal that the issues and proof in said extended hearings not only related to the violation by Columbia of the Federal anti-trust statutes but also to its fiduciary obligations and to the damages which resulted to the American Fuel and Power Company, to its subsidiaries, and to the creditors of American Fuel and of its subsidiaries. In the opinion of the Circuit Court of Appeals written by Judge Simons, the Court reviewed the conduct of Columbia and its results. In referring to the Detroit project, the Court said on page 466:

"Whether it would have ultimately succeeded is a matter which lies entirely in the realm of speculation."

Again on the same page the Court referred to the argument of Columbia—

"that Columbia's acquisition of American Fuel securities did not adversely affect or damage the interests of the debtors or their security holders."

On page 467, the Court said:

"To sustain the judgment below the appellees must have proved not only inequitable or illegal conduct, but that the debtors, their stockholders or public creditors were injured thereby."

Again on page 468, the Court said:

"The Detroit line would have served American Fuel and its subsidiaries, and in its successful completion lay their only hope for escape from impending financial disaster."

Again in the opinion on page 469, the Court said:

"The prospect of recovery and possible profit in what may now seem to have been initially an improvident investment by security holders, lay in the achievement by American Fuel and its subsidiaries of an expanded market to be opened up by the Detroit pipe line. The realization of their hopes was forever destroyed by the activities of Columbia in assuming control of the American Fuel System, terminating further pursuit of the Detroit plan and placing the companies in receivership. It was neither for the court below, nor is it for us to indulge in retrospective prophecy."

Again on the same page, the Court said:

"The hope that the debtors, their public creditors and the Syndicate may have had in the success of the Detroit project, was one they had a right to entertain. If realized, American Fuel would not have been the first company saved from disaster by improved management and access to an expanded market. It is idle, therefore, to contend that the elimination of that prospect was not an injury to them, however impossible it may now be to measure their damage."

Further on in the opinion on pages 469 and 470, the Court in disposing of the arguments made on behalf of Columbia to take penalties in the anti-trust laws or exclusion said:

"A denial of this contention does not mean, of course, that the power may be invoked in respect to conduct constituting no wrong to the parties or interests in litigation."

This Court is thoroughly familiar with the record in these proceedings and the record which was involved upon the appeals in the above cited cases which were decided by the Circuit Court of Appeals. In the proceedings with respect to those cases, pleadings and the proof dealt in great detail with the acts and conduct of Columbia and the resulting detriment or damages to American Fuel and its subsidiaries and to their creditors. Both the allegations in the pleadings and the proof, which was extensive and voluminous, failed to establish such degree of certainty or such measure of damages as would justify the Court or a jury in determining or undertaking to determine the amount of such damages. As pointed out by the Circuit Court of Appeals in both opinions, *supra,* the pleadings and the proof established the wrongful acts of Columbia; that Columbia's acts destroyed any hope which American Fuel and its subsidiaries had for escaping impending financial disaster; that the American Fuel and its subsidiaries and their creditors had a right not to have the door closed to such hopes by wrongful or illegal acts of Columbia; and, that the elimination of those hopes or prospects constituted an inactionable injury "however impossible it may now be to measure their damage."

█ It is apparent to this Court that all of the parties in interest in the litigation against Columbia realized the difficulties which would have to be encountered in seeking relief in damages against Columbia; and, that in the light of such difficulties they elected to and did pursue their remedy of asking for the complete rejection or subordination of Columbia's claims and stock interests. As a result of that election they succeeded in subordinating the claims of Columbia in each action to the claims of

all other creditors of each corporation. This Court is of the opinion that the parties who united in said action and in said proceedings against Columbia wisely elected to pursue that remedy. However, in the pursuit of that remedy there was necessarily in issue the facts with respect to the damages which they sustained by reason of Columbia's acts. Their gain and Columbia's loss by reason of the subordination of Columbia's claims are definite and certain and their gain exceeds the amount which probably could have been recovered from Columbia had they elected to pursue the remedy for the recovery of damages. The Court is of the opinion that the parties are bound by their election of the remedy of rejection or subordination and that as the result of the prosecution of that remedy to final judgment, under the principles of election of remedy, the law of the case, and of *res judicata,* the final judgment subordinating Columbia's claims precludes any right to now relitigate upon some other theory of relief or recovery. In addition to the foregoing facts and reasons, this Court is of the opinion that to approve the prayer of the petition filed by the Green Committee and to authorize the Trustee to undertake to relitigate the acts and conduct of Columbia on some other theory of remedy or right at this late date in the proceedings would be unreasonable and unduly burdensome to the estate of Inland and would unreasonably delay a reorganization of Inland. The Court is satisfied that the proof with respect to the Detroit Project fell far short of that certainty required to establish liability of Columbia in damages— that is to establish the measure of such damages.

As pointed out by the Securities and Exchange Commission on page 5 of its report on the proposed plans of reorganization of Inland Gas Corporation and American Fuel and Power Company et al., which report was filed on June 1, 1949, Columbia's "total investment in the American Fuel System amounts to $6,318,625" plus brokerage commissions. The subordination of Columbia's claims against the Kentucky Fuel Corporation completely wiped out Columbia's claim against that Company be-

cause the assets are far insufficient to pay even the First Mortgage Bonds of that Company which are held by the creditors other than Columbia. The subordination of Columbia's claims against American Fuel and Power Company amount to a complete rejection of said claims because the assets of American Fuel and Power Company are insufficient to pay the debts of that Company held by creditors other than Columbia. Columbia's claims as of December 31, 1948, against Inland amounted to $4,548,297 for which Columbia can receive only Class B stock in reorganized Inland for the net equity remaining after creditors other than Columbia have been provided for. That net equity will amount to only approximately $575,000, so that as a result of the subordination of Columbia's claims against Inland, Columbia will lose at least $4,000,000 in addition to its losses as a result of the subordination of its claims against Kentucky Fuel Gas Corporation and its claims against American Fuel and Power Company. The other creditors of Inland, of Kentucky Fuel and American Fuel have profited and will profit by reason of the subordination of Columbia's claims. The amount and the extent to which the other creditors of Inland, Kentucky Fuel and American Fuel have profited and will profit by reason of the subordination of Columbia's claims, in the opinion of the Court, will exceed in amount any damages which might have been recovered from Columbia had an action or actions for damages been prosecuted to final judgment. Columbia's loss, in the opinion of the Court, by reason of the subordination of its claims against Inland, Kentucky Fuel and American Fuel is much greater than the amount which could have been recovered in damages had an action or actions for damages been instituted and prosecuted to final judgment against Columbia. These conclusions are predicated upon the Court's knowledge of the entire record and of all the evidence that was introduced in the proceedings which resulted in the subordination of Columbia's claims. It follows that the creditors of Inland, of Kentucky Fuel and of American Fuel wisely elected to pursue the remedy which resulted in the subordination of Columbia's

claims and having pursued that remedy to a final judgment, they cannot now retain the fruits of that remedy and maintain another action or other actions predicated upon the same facts and circumstances, or substantially the same facts and circumstances, in an endeavor to recover damages from or other relief against Columbia. When the interested parties who may have two or more remedies elect to and do prosecute an action to final judgment and recover and retain the maximum fruits of such recovery, they cannot be permitted to relitigate the same or substantially the same facts and issues against the same party on some other theory or basis of recovery or remedy. There must be an end sometime to all litigation and as in this case where the parties in interest have chosen the cause of action and the remedy which they think for their best interests, and have pursued that remedy to final judgment and the benefits or fruits of that judgment have been received and retained by them, that should forever end the litigation.

For the foregoing reasons, the Court is of the opinion that the prayer of the petition filed by the Green Committee should be denied in its entirety.